UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RHONDA LAVETTE FIFER,<br><br>                              Plaintiff,<br>v.<br><br>DR. DAVID HOLLOWAY,<br><br>                             Defendant. | Case No. 15-CV-1121-JPS<br><br><br><br>ORDER |

       In this action under 42 U.S.C. § 1983, Plaintiff Rhonda LaVette Fifer ("Fifer"), a state prisoner, claims Defendant Dr. David Holloway ("Dr. Holloway") violated her civil rights by acting with deliberate indifference to a serious medical need. Presently before the Court is Dr. Holloway's motion for summary judgment. (Docket #46). On August 23, 2016, Fifer filed an opposition to the motion (Docket #54), and on September 6, 2016, Dr. Holloway filed a reply (Docket #56). The motion is now fully briefed and ready for disposition. For the reasons detailed herein, Dr. Holloway's motion for summary judgment will be granted and this action will be dismissed in its entirety.

       Before turning to the factual background of the case, the Court must address various preliminary matters. On September 9, 2016, and September 21, 2106, Fifer filed motions to amend the complaint (Docket #57, #60). Fifer seeks to forego the 2010 claims and instead add claims related to Dr. Holloway's 2015 treatment of Fifer with the medications Cymbalta and Hydrozyzine. (*See* Docket #60). The Court's initial scheduling order allowed for amended pleadings to be filed until January 15, 2016. (Docket #17 at 1). Federal Rule of Civil Procedure provides that "a party may amend its

pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

Here, Dr. Holloway has not consented to an amended pleading, nor does the Court find that leave to amend is appropriate in this case. Fifer filed both her motions after Dr. Holloway filed for summary judgment and had likely spent considerable time and money defending the case. As such, the proposed amendment at this stage would likely prejudice Dr. Holloway, and the Court will deny Fifer's motions to amend the complaint. (Docket #57, #60). In light of this ruling, the Court will also grant Dr. Holloway's motion to strike. (Docket #59). Because the Court will not allow Fifer to amend her claims at the eleventh hour, Fifer's additional briefing is unnecessary to decide the issues presented on summary judgment.

1.  FACTUAL BACKGROUND[1]

    1.1   The Parties and Claims

The Court allowed Fifer to proceed on her claim that Dr. Holloway violated the Eighth Amendment because he showed deliberate indifference to her serious medical needs when, despite knowing her medical history, he prescribed medication with serious side effects of which he failed to warn her. (Docket #12 at 5-6). The claims allowed to proceed involve incidents from 2010 and 2015. Thus, the Court will limit its discussion to Fifer's medical treatment and history during those relevant time periods.

---

[1]The Court notes that Fifer failed to submit responses to Holloway's proposed finding of fact in violation of Civil L.R. 56(b)(2)(B). Civil L.R. 56(b)(4) provides that the Court "will deem uncontroverted statements of material fact admitted solely for purpose of deciding summary judgment." Fifer verified her amended complaint, however, and the Court may consider it to the extent that Fifer's allegations are based on personal knowledge. *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(e); *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

Fifer is an inmate in the custody of the Wisconsin Department of Corrections and has been incarcerated at Taycheedah Correctional Institution ("TCI") since 1999. (DPFF ¶ 1). Dr. Holloway is a board-certified psychiatrist and licensed to practice medicine in the State of Wisconsin. (DPFF ¶ 2). At all times relevant to Fifer's lawsuit, Dr. Holloway was employed as a psychiatrist at TCI. (DPFF ¶ 3). Dr. Holloway voluntarily left the employment of the Department in May 2015 to work in the private sector. (DPFF ¶ 4).

1.2     Fifer's Medical Treatment

Dr. Holloway first treated Fifer on November 5, 2010. (DPFF ¶ 21). Prior to that appointment, Fifer had been diagnosed with post traumatic stress disorder and anxiety by another psychiatrist. (DPFF ¶ 23). In preparation for the November 5, 2010 appointment, Dr. Holloway reviewed Fifer's records and noted that Fifer was taking Remeron, which was prescribed by another psychiatrist. (DPFF ¶ 22).

At the November 5, 2010 appointment, Dr. Holloway learned that Fifer believed Remeron caused her to lose consciousness the week before, and to fall and hit her head. Fifer also believed the drug caused dizziness and hand tremors. Fifer thereafter refused to take Remeron as prescribed, taking it only every three days. (DPFF 2 ¶ 4). Dr. Holloway discontinued the Remeron prescription on November 10, 2010, because Fifer was not taking it as directed, which could cause adverse effects. (DPFF ¶ 25). Dr. Holloway

did not prescribe Remeron or Trazodone to Fifer at any time in 2010. (DPFF ¶ 26).[2]

On February 7, 2015, Dr. Holloway prescribed Buspirone to Fifer because she reported increased anxiety symptoms at this appointment.. (DPFF ¶ 46). Buspirone is an anti-anxiety medication and common side effects include dizziness, nausea, headache, nervousness, and drowsiness. (DPFF ¶ 61). Fifer continued on the Buspirone until April 30, 2015, when the drug was discontinued because she refused to take it. (DPFF ¶ 50).

Dr. Holloway saw Fifer three more times between February 7, 2015, and May 2015 before he voluntarily departed the Department. (DPFF ¶ 51). At an April 4, 2015 appointment, Fifer reported, for the first time, muscle twitching that she associated with hydroxyzine, not Buspirone. Dr. Holloway, therefore, discontinued the hydroxyzine but continued Buspirone at this appointment. (DPFF ¶ 64).

On May 2, 2015 (Fifer's last appointment with Dr. Holloway), Fifer agreed to restart the Buspirone because she felt she suffered side effects from Cymbalta, which was discontinued on April 30, 2015. Fifer never told Dr. Holloway that she experienced adverse side effects from Buspirone . (DPFF ¶ 52).

Fifer's amended complaint alleges that she suffers from tardive dyskinesia due to the lack of knowledge of harmful side effects from medical

---

[2]Fifer's amended complaint alleges that Dr. Holloway prescribed her Remeron and Trazodone and that on November 5, 2010, Dr. Holloway encouraged her to take Remeron without discussing side effect issues. (Docket #11 at 4). Fifer's medical records, however, contradict this assertion. In any event, it is clear from Fifer's filings that she no longer wishes to pursue a claim related to Remeron. (Docket #60 at 1). As such, this fact is not material to the issues presented on summary judgment.

staff. (Am. Compl. at 5, Docket #11). However, Fifer has never been diagnosed with tardive dyskinesia. (DPFF ¶ 68). Tardive dyskinesia is a disorder that causes involuntary face, lip, and mouth movements that is common with long-term use of anti-psychotic medication. (DPFF ¶ 69). Fifer reported that she believed she suffered from tardive dyskinesia to Dr. Vickrey on August 5, 2015, but the doctor did not see any involuntary movements during the appointment and told her that if she in fact experienced these movements it was likely due to drugs other than the drugs at issue in this case. (DPFF ¶ 73). The risk of developing tardive dyskinesia as a result of the drugs prescribed by Dr. Holloway are very rare. (DPFF ¶ 72).

### 1.3 Fifer's Offender Complaints

Inmates under the supervision of the Department may complete offender complaint forms as part of the inmate complaint review system ("ICRS"). (DPFF ¶ 5). Fifer did not file any offender complaints in November or December of 2010. (DPFF ¶ 6). The only complaint that Fifer filed in 2010 was related to a dental issue in February of 2010. Fifer's next offender complaints were filed in November of 2011, and did not involve medical care. (DPFF ¶ 7).

Fifer filed three medical-related offender complaints in 2015. (DPFF ¶ 8). Offender Complaint No. TCI-2015-3383) is dated February 7, 2015, and states that "there have been numerous times I haven't been receiving side effect information before consuming my prescribed medication." She also references a "recent situation" where she "had to ask and in return had to wait days before [she] actually received the information." Offender Complaint No. TCI-2015-3383 does not reference Dr. Holloway or a specific

Page 5 of 15

Case 2:15-cv-01121-JPS   Filed 09/30/16   Page 5 of 15   Document 64

drug. (DPFF ¶ 10). Offender Complaint No. TCI-2015-3383 was dismissed and Fifer was reminded to provide more specific information if she has similar issues in the future so the institution can properly investigate and remedy the situation. (DPFF ¶ 11). Fifer took no further action on Offender Complaint No. TCI-2015-3383. (DPFF ¶ 12).

Offender Complaint No. TCI-2015-11419 is dated June 23, 2015, and Fifer alleged that "once again the nurses are responsible for distributing the information of side effects once medication is prescribed but they still fail to do so." (DPFF ¶ 13). Offender Complaint No. TCI-2015-11419 was affirmed, and the complaint examiner noted that a medication distributed to Fifer on June 18, 2015 (Amlodipine) was distributed without information about side effects. (DPFF ¶ 14). Offender Complaint No. TCI-2015-11419 does not specifically mention Dr. Holloway or Buspirone . (DPFF ¶ 15).

Offender Complaint No. TCI-2015-13709 was filed on July 27, 2015. (DPFF ¶ 17). In Offender Complaint No. TCI-2015-13709 Fifer referenced her June 2015 offender complaint and noted that she continues to have issues with receiving side effect information. (DPFF ¶ 18). Offender Complaint No. TCl-2015-13709 specifically references over-the-counter medications, and not the medications that are at issue in this lawsuit. (DPFF ¶ 19). Offender Complaint No. TCl-2015-13709 does not mention Dr. Holloway. (DPFF ¶ 20).

2.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir.

2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

3. DISCUSSION

As discussed in detail below, the Court finds that: (1) Fifer failed to exhaust administrative remedies as to her 2010 allegations against Dr. Holloway; and (2) there is no evidence in the record to support Fifer's Eighth Amendment claim that Dr. Holloway acted with deliberate indifference to her serious medical needs in 2015. The Court begins its discussion with a discussion of the exhaustion requirement and then will address the merits of Fifer's remaining claim pertaining to medical treatment in 2015.

### 3.1 Exhaustion Requirements

"A prisoner cannot bring a cause of action under federal law regarding prison conditions 'until such administrative remedies as are available are exhausted.'" *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016) (quoting 42 U.S.C. § 1997e(a)). "Federal courts strictly enforce this requirement, and a prisoner fulfills this duty by adhering to 'the specific procedures and deadlines established by the prison's policy.'" *Hernandez*, 814 F.3d at 842 (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)). The Supreme Court has recently reemphasized that strict exhaustion is mandatory, explaining that "the PLRA prevented a court from deciding that exhaustion would be unjust or inappropriate in a given case[,]" even where "a prisoner makes a reasonable mistake about the meaning of a prison's grievance procedures." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

When determining whether an inmate has exhausted administrative remedies, "the applicable procedural rules" that a court looks to "are defined not by the PLRA, but by the prison grievance process itself" and "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate exhausts only after "using all steps that the [prison] holds out, and doing so properly (so that the [prison] addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Properly using the grievance process means complying with the prison's procedural rules, "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to

consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

Here, the undisputed evidence shows that Fifer failed to exhaust her claims as to the 2010 incidents. Not only did Fifer not file *any* complaints in November or December 2010, the time of the alleged deliberate indifference, but the only complaint Fifer filed at all in 2010 involved dental issues. (DPFF ¶¶ 6-7). Fifer does not dispute these facts. Instead, it is clear from her opposition materials and motions to amend the complaint that she does not intend to pursue the 2010 allegations. (*See* Docket #54 at 1; Docket #60 at 1). As such, the Court is obliged to grant Dr. Holloway's motion for summary judgment as to the 2010 deliberate indifference allegations for the failure to exhaust administrative remedies.

Dr. Holloway also maintains that Fifer failed to exhaust administrative remedies as to the 2015 allegations. Fifer filed three medical complaints in 2015 related to medication side effect information, however, Dr. Holloway argues that: (1) the first complaint was not exhausted; and (2) the second and third complaints fail to reference Dr. Holloway and took place months after the February 2015 Buspirone claims.

The Court finds exhaustion as to the 2015 incidents to be a closer question. On the one hand, the second and third exhausted complaints do not mention either Dr. Holloway or Buspirone specifically, but on the other hand, TCI officials were certainly on notice that Fifer had issues with receiving medication side effect information in early 2015. The Court need not dwell on this issue, however, because even when giving Fifer all benefit of doubt and assuming exhaustion of the 2015 allegations, the Court

Page 9 of 15

Case 2:15-cv-01121-JPS   Filed 09/30/16   Page 9 of 15   Document 64

nonetheless finds that the claim fails on the merits. As such, the Court finds that the wiser course is to proceed to the merits of this issue without definitely deciding the exhaustion issue as to the 2015 allegations.

### 3.2 Medical Deliberate Indifference

Fifer alleges that Dr. Holloway acted with deliberate indifference to her medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) (holding that deliberate indifference to the serious medical needs of a prisoner may serve as the basis for a § 1983 claim). Specifically, Fifer's allegations from 2015 against Dr. Holloway include: (1) on February 2015 Dr. Holloway prescribed her Buspirone for her anxiety and failed to provide information about harmful side effects; and (2) on April 4, 2015, Dr. Holloway encouraged Fifer to continue taking Trazodone without knowledge of the side effects. (Am. Compl at 4-5, Docket #11).

"The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects prisoners from prison conditions that cause the 'wanton and unnecessary infliction of pain,' including…grossly inadequate medical care." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)) (internal citations omitted). The prisoner has the burden "to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 325 (1986)). To prove a claim of deliberate indifference to serious medical need, Fifer must show: (1) an objectively serious medical condition; (2) that the defendants knew of the condition and were deliberately indifferent in treating her; and (3) this indifference caused Fifer some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Gayton*, 593 F.3d at 620. Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Negligence cannot support a claim of deliberate indifference; nor is medical malpractice a constitutional violation. *Estelle*, 429 U.S. at 105-06; *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Barry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). The official must act with "a sufficiently culpable state of mind." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

When it comes to medical care in the prison setting, "prisoner[s] [are] not entitled to receive 'unqualified access to healthcare,'" *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)); instead, "prisoners are entitled only to 'adequate medical care,'" *id.* (quoting *Johnson*, 433 F.3d at 1013). Adequate medical care may involve care that the prisoner disagrees with; this disagreement alone is insufficient to establish an Eighth Amendment violation. *See Pyles*, 771 F.3d at 409. To establish deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)); or, stated another way, that the treatment decision "represents so significant a departure from accepted professional standards or practices that it calls into question whether the [medical professional] was actually exercising his professional judgment," *id.* (citing *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) and *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)); *Gayton*, 593 F.3d at

622-23. If the plaintiff fails to provide enough evidence to show deliberate indifference, and it cannot be inferred from the medical professional's treatment, "the deliberate indifference question may not go to the jury." *Gayton*, 593 F.3d at 620, 623. As indicated in the screening order, allegations of a substantial risk of developing a side effect are sufficient to state a claim of deliberate indifference when a doctor fails to warn of those side effects. *Phillips v. Wexford Health Sources, Inc.*, 522 Fed. Appx. 364, 367 (7th Cir. 2013)

The Court finds that Dr. Holloway is entitled to summary judgment on the deliberate indifference claim as a matter of law. Even assuming Fifer has shown an objectively serious medical condition (Dr. Holloway maintains she has not), and assuming she suffered a harm (again, Dr. Holloway maintains has not), Fifer has still failed to put forth any evidence establishing that Dr. Holloway knew of a serious risk to Fifer's health and consciously disregarded that risk. *See Holloway*, 700 F.3d at 1073.

To begin, Fifer's medical records establish that Dr. Holloway discussed possible side effects for her prescribed medications in February, April, and May of 2015. (Docket #151-1 at 123, 125, 128). However, even if the Court were to assume the medical records are false, and that Dr. Holloway entirely failed to discuss possible side effects, Fifer's claim still fails. Certainly, medical professionals *should* strive to discuss with all patients the side effects of prescribed mediation; the failure to do so, however, does not necessarily rise to a violation of the Eighth Amendment. *Burgess v. Mar*, 395 F. App'x 368 (9th Cir. 2010) ("failure to warn [plaintiff] of the potential side effects of pain medication constitute[s] negligence at most, and not deliberate indifference").

Dr. Holloway treated Fifer on various occasions throughout 2015 until May when he voluntarily left TCI for private practice. Even if the Court assumes Dr. Holloway misinformed Fifer about medication side effects or failed to discuss certain side effects with her, this conduct would only support a medical malpractice claim at best. *Id.* The record before the Court is devoid of any facts to suggest that Dr. Holloway had "a sufficiently culpable state of mind" to support a deliberate indifference claim. *See Walker*, 293 F.3d at 1037. During Dr. Holloway's brief care of Fifer in 2015, the Court cannot say that his treatment was so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment. *See Duckworth*, 532 F.3d at 679; *cf. Gil*, 381 F.3d at 663 & n.3 (finding deliberate indifference where the prison doctor prescribed a drug that worsened the inmate's condition because the appropriate drug was not part of the BOP's formulary); *Greeno*, 414 F.3d at 654 (finding deliberate indifference where medical defendants would not alter Greeno's course of treatment over a two year period even though his condition was getting worse and he was vomiting on a regular basis and the defendants nevertheless persisted in a course of treatment known to be ineffective).

Dr. Holloway took measures to address Fifer's mental health conditions, and, although the treatment may have caused unpleasant side effects that could have affected Fifer's decisions to take those medications in the first place, the summary judgment record does not reveal that no minimally competent professional would have provided this regime of treatment. *See, e.g., Gayton v. McCoy*, 593 F.3d 610, 622-23 (7th Cir. 2010) (nurse was not deliberately indifferent to inmate's medical needs where she took reasonable measures to ensure that inmate would get medication). To

prove an Eighth Amendment claim in this instance, Fifer must show that, by prescribing certain medications to Fifer, Dr. Holloway knew of a substantial risk that Fifer would suffer certain side effects. *See Phillips,* 522 F. App'x at 367 ("Even if we assume that fatigue, decreased urination, and cramps are serious conditions, Phillips needed to allege 'that the defendants knew of a substantial risk of [those] harm[s] to the inmate and disregarded the risk.'") (Alterations in original; citation omitted.). Fifer has not done so and has, therefore, failed to meet her "heavy" burden to establish that Dr. Holloway violated the Eighth Amendment. *See Pyles,* 771 F.3d at 408.

In light of the foregoing, the Court finds that no reasonable jury could find that Dr. Holloway's actions constituted deliberate indifference to a serious medical need. Accordingly, the Court will grant Dr. Holloway's motion for summary judgment as to the 2015 allegations..

4. CONCLUSION

In sum, the Court will grant Dr. Holloway's motion for summary judgment. The undisputed evidence shows that Fifer failed to exhaust her administrative remedies as to the 2010 allegations. Additionally, Fifer's 2015 allegations fail on the merits because she fails to show any evidence that Dr. Holloway was consciously aware of a serious medical risk and disregarded that risk. As such, the Court will grant Dr. Holloway's motion for summary judgment and dismiss this action in its entirety.

Accordingly,

IT IS ORDERED that Dr. Holloway's motion for summary judgment (Docket #46) be and the same is hereby GRANTED, as more fully described in detail above, and that this action be and the same is hereby DISMISSED;

IT IS FURTHER ORDERED that the Fifer's motions to amend the complaint (Docket #57, #60) be and the same are hereby DENIED;

IT IS FURTHER ORDERED that Fifer's motion for an extension of time to recruit counsel (Docket #44) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that Fifer's motion for leave to file a motion to reconsider (Docket #61) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that Dr. Holloway's motion to strike (Docket #59) be and the same is hereby GRANTED.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 15 of 15

Case 2:15-cv-01121-JPS    Filed 09/30/16    Page 15 of 15    Document 64